# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JULIE DOMOKOS<br>6712 Olde Field Court<br>Mentor, Ohio 44060<br><br>      *Plaintiff*,<br><br>vs.<br><br>THE RESERVES NETWORK, INC.<br>c/o Statutory Agent<br>Donald L. Stallard<br>22021 Brookpark Road, #220<br>Fairview Park, OH 44126<br><br>and<br><br>NEIL STALLARD<br>8619 Courtland Drive<br>Strongsville, OH 44149<br><br>      *Defendants*. | Case No.<br><br>Judge<br><br><br><br>**Complaint**<br><br>(Jury Demand Endorsed Hereon) |

## INTRODUCTION

1. The Reserves Network, Inc. terminated Julie Domokos the very day it processed her request for FMLA leave for a disabling condition. She was the oldest vice president at the company, the only female, and had recently required accommodations for her disability. Domokos brings this case to vindicate her rights under Ohio and federal discrimination law.

## PARTIES

2. Domokos is an Ohio resident.

3. Domokos is over the age of 40.

4. Domokos is female.

5. From 2018 through the termination of her employment at Reserves, Domokos was a qualified individual with a disability.

6. At all times relevant to this lawsuit, Domokos was a "person" and an "employee" within the meaning of Chapter 4112 of the Ohio Revised Code, the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623, *et seq.* ("ADEA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

7. At all times relevant to this lawsuit, Domokos was an "eligible employee" within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

8. The Reserves Network, Inc. ("Reserves") is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio.

9. At all times relevant to this lawsuit, Reserves was an "employer" within the meaning of Chapter 4112 of the Ohio Revised Code, the ADA, the ADEA, Title VII and the FMLA, and was a "covered entity" within the meaning of the ADA.

10. Defendant Neil Stallard ("Stallard") is an Ohio resident and management employee of Reserves.

11. At all times relevant to this lawsuit, Stallard was a "person" within the meaning of Ohio Revised Code Chapter 4112.

12. At all times relevant to this lawsuit, Stallard was an agent, servant, and/or supervisory or management employee of Reserves, acting in the course and scope of his agency, service, and/or employment, and possessing actual or apparent authority over hiring, firing, promotion, advancement, and other terms and conditions of employment.

13. At all times relevant to this lawsuit, Reserves acted through its agents, servants and/or supervisory or management employees, who were acting in the course and scope of their agency, service, and/or employment, and possessing actual or apparent authority over hiring, firing, advancement, and other terms and conditions of employment.

## JURISDICTION AND VENUE

14. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because the claims involved arise under the laws of the United States.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this lawsuit occurred in this District.

16. The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

17. Plaintiff has satisfied the administrative preconditions to suit: having filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission; having received a right-to-sue letter (attached as Exhibit A); and, having filed this complaint within 90 days of receipt of the right-to-sue letter.

## GENERAL ALLEGATIONS

A.  *Domokos was an outstanding Vice-President with a long history of success.*

18. Domokos was employed by Reserves from approximately July 29, 2005 until May 31, 2019.

19. For 12 years, Domokos was a successful member of the Reserves team.

20. Over the years, Domokos was so successful with one account, Swagelok, a significant customer, that in 2011 Reserves expanded her responsibilities to other important customers.

21. In 2014, Reserves promoted Domokos to the position of Vice President of Strategic Partnerships.

22. Throughout this time, Domokos received positive performance reviews.

23. Domokos was qualified for the position of Vice President of Strategic Partnerships.

B.  *Stallard begins to supervise Domokos, and immediately discriminates against her.*

24. In approximately August 2017, Domokos began to report to Stallard, the CEO.

25. From the time Stallard became Domokos' supervisor, he treated her differently, and less favorably, than substantially younger and male employees.

26. Stallard discriminated against Domokos in the terms and conditions of her employment by: unfairly criticizing her work performance; otherwise interfering with her ability to succeed in the performance of her duties; and,

giving preferential treatment to the substantially younger and male employees. The employees who received preferential treatment were not disabled.

27. Stallard treated Domokos abruptly and cut her off in meetings.

28. Stallard disregarded Domokos' recommendations about the accounts she managed and caused some of those accounts to stop doing business with Reserves, and then blamed Domokos for the loss.

29. Stallard undermined Domokos' authority with her subordinates. For example, Domokos had expressed concerns regarding the performance of a younger male regional director who reported to her and recommended that he remain in his position and be reevaluated in six months. But Stallard gave him a significant salary increase, promoted him, and increased his profit share so much it was greater than Domokos' profit share.

30. Stallard otherwise interfered with Domokos' management of her department and actively sabotaged her work. As soon as he became her supervisor, he took away her authority to make final decisions about her accounts, and effectively excluded her from many of her duties. He instructed her not to visit certain accounts and gave younger, male and non-disabled employees decision-making authority. Stallard then blamed Domokos for problems caused by those younger, male and non-disabled employees over which Domokos had no control.

31. Around the time Stallard became the CEO, most, if not all, of the other vice presidents were placed on a new profit-sharing plan with a 'kicker' for growth; Domokos was not placed on the new plan.

32. The new profit-sharing plan paid more than the plan Domokos' was on.

33. Domokos asked Stallard why she was not placed on the new plan, and he responded that she had 'fallen through the cracks.'

34. Even after Domokos brought to Stallard's attention that she was not moved to the new plan, Reserves' failed to move her to the new plan.

35. Reserves discriminated against Domokos in the terms and conditions of her employment on the basis of her age and gender in that Reserves paid higher profit sharing to male vice presidents and those who were substantially younger than Domokos.

36. The vice presidents who received higher profit sharing than Domokos were not disabled.

37. Later in 2018, Domokos learned that one of her substantially younger male subordinates had also received an increase in profit sharing and was making more profit sharing than she was.

38. The subordinate who received the higher profit-share was not disabled.

39. Domokos asked Stallard about her subordinate receiving higher profit-sharing, and he became angry with her.

40. Stallard asked Domokos' what she suggested her profit-sharing should be; she proposed a profit-sharing plan that was aligned with what her younger male peers and subordinate received, and Stallard angrily refused.

41. Stallard told Domokos that she should be "happy" with what he paid her.

C. *Domokos becomes disabled; Reserves terminates her after she requests a 2–3 month leave of absence for treatment.*

42. Beginning in 2018, Domokos developed significant osteoarthritis in her left knee, which substantially limited her ability to go from sitting to standing, to stand for long periods, and to walk.

43. Domokos' disabling condition worsened through 2018 and into 2019 and eventually required her to use a cane to ambulate.

44. Domokos' condition was known to her supervisors and colleagues at Reserves.

45. In February 2019, after seeing her coworker drop her off at a customer's entrance to reduce the distance she needed to walk, Stallard asked Domokos when she was going to have her disabling condition "taken care of."

46. In response, Domokos told Stallard that she had just hired a contractor to make her home bathroom handicap accessible, and she would be scheduling surgery for knee replacement.

47. After that conversation, Stallard treated Domokos with increased hostility whenever he interacted with her.

48. In March 2019, Domokos requested a 2–3 month medical leave of absence to have surgery for her disabled condition.

49. Domokos' request for time off was a request for a reasonable accommodation of her disability.

50. On May 30, 2019, human resources informed Domokos that her request for leave was processed and granted.

51. The very next day, Reserves terminated Domokos' employment.

52. Domokos was replaced by a substantially younger, non-disabled male.

## COUNT ONE
## Disability Discrimination, ADA

53. Domokos realleges each paragraph above as if fully rewritten herein.

54. For the last year of her employment at Reserves, Domokos had a physical impairment that substantially limited one or more of her major life activities, including but not limited to ambulating, performing physical labor, and traveling.

55. At all times relevant to this lawsuit, Domokos was a member of a protected class because she was a qualified individual with a disability.

56. Domokos was qualified for the position she held with Reserves and could have performed the essential functions of her job with a reasonable accommodation.

57. Domokos requested the reasonable accommodation of a brief period of job-protected medical leave due to her disability.

58. Reserves was aware Domokos was requesting leave due to her disability.

59. In violation of the ADA, Reserves held Domokos' need and request for medical leave against her and fired her because of her disability and request for leave.

60. Reserves' misconduct was because of Domokos' disability.

61. As a direct and proximate consequence of Reserves' unlawful and discriminatory misconduct, described above, Domokos suffered emotional distress and humiliation, lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

62. Reserves is therefore liable to Domokos for disability discrimination pursuant to the ADA.

63. The conduct of Reserves, as described above, was done: maliciously or with conscious disregard of Domokos' rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by agents or servants of Reserves, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which Reserves is liable for punitive damages.

## COUNT TWO
### Disability Discrimination, R.C. §§ 4112.02 and 4112.99

64. Domokos realleges each paragraph above as if fully rewritten herein.

65. In violation of R.C. § 4112.02, Reserves held Domokos' need and request for medical leave against her and fired her because of her disability and request for leave.

66. As a direct and proximate consequence of Reserves' unlawful and discriminatory misconduct, described above, Domokos suffered emotional distress and humiliation, lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

67. Reserves is therefore liable to Domokos for disability discrimination pursuant R.C. §§ 4112.02 and 4112.99.

68. Reserves' conduct, described above, was done: maliciously or with conscious disregard of Domokos' rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Reserves' agents or servants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which Reserves is liable for punitive damages.

## COUNT THREE
### Gender Discrimination, Title VII

69. Domokos realleges each paragraph above as if fully rewritten herein.

70. Reserves discriminated against Domokos in the terms and conditions of her employment, unfairly criticized her work, interfered with her ability to be successful in her work, and terminated her employment, because of her gender.

71. As a direct and proximate consequence of Reserves' unlawful and discriminatory misconduct, described above, Domokos suffered emotional distress and humiliation, lost salary, wages, and benefits; incurred attorneys'

fees and costs of litigation; and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

72. Reserves is therefore liable to Domokos for gender discrimination pursuant to Title VII.

73. The conduct of Reserves, as described above, was done: maliciously or with conscious disregard of Domokos' rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by agents or servants of Reserves, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which Reserves is liable for punitive damages.

## COUNT FOUR
### Gender Discrimination, R.C. §§ 4112.02 and 4112.99

74. Domokos realleges each paragraph above as if fully rewritten herein.

75. Reserves discriminated against Domokos' in the terms and conditions of her employment because of her gender in violation of R.C. § 4112.02.

76. As a direct and proximate consequence of Reserves' unlawful and discriminatory misconduct, described above, Domokos suffered emotional distress and humiliation, lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

77. Reserves is therefore liable to Domokos for gender discrimination pursuant R.C. §§ 4112.02 and 4112.99.

78. Reserves' conduct, described above, was done: maliciously or with conscious disregard of Domokos' rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Reserves' agents or servants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which Reserves is liable for punitive damages.

## COUNT FIVE
### Age Discrimination, ADEA

79. Domokos realleges each paragraph above as if fully rewritten herein.

80. At all times relevant to this lawsuit, Domokos was a member of a protected class because she was over the age of forty.

81. As described above, Reserves discriminated against Domokos' in the terms and conditions of her employment because of her age, and terminated her because of her age, in violation of the ADEA.

82. As a direct and proximate consequence of Reserves' unlawful and discriminatory misconduct, described above, Domokos suffered emotional distress and humiliation, lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

83. Reserves is therefore liable to Domokos for age discrimination pursuant to the ADEA.

84. Reserves' conduct, described above, was willful and/or intentional for which Reserves is liable for liquidated damages.

## COUNT SIX
### Age Discrimination, R.C. § 4112.14

85. Domokos realleges each paragraph above as if fully rewritten herein.

86. Reserves terminated Domokos' employment without just cause, because of her age, in violation of R.C. § 4112.14.

87. As a direct and proximate consequence of Reserves' unlawful and discriminatory misconduct, described above, Domokos suffered emotional distress and humiliation, lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

88. Reserves is therefore liable to Domokos for age discrimination pursuant R.C. § 4112.14.

89. Reserves' conduct, described above, was done: maliciously or with conscious disregard of Domokos' rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Reserves' agents or servants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which Reserves is liable for punitive damages.

## COUNT SEVEN
### Aiding and Abetting Discrimination, R.C. §4112.02(J)

90. Domokos realleges each paragraph above as if fully rewritten herein.

91. Stallard participated in, facilitated, were involved in, and/or made the decision to discriminate against and ultimately fire Domokos.

92. Through the conduct stated above, Stallard aided, abetted, incited, compelled, or coerced an act declared by R.C. § 4112.02 to be an unlawful practice, and/or attempted directly or indirectly to commit an act declared by R.C. § 4112.02 to be an unlawful practice.

93. Stallard is therefore liable to Domokos for aiding and abetting discrimination under R.C. §§ 4112.02(J) and 4112.99.

94. As a direct and proximate consequence of Stallard's unlawful and discriminatory misconduct, described above, Domokos suffered emotional distress and humiliation; lost salary, wages, and benefits; incurred attorney fees and costs of litigation; and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

95. Stallard's misconduct, as described above, was done: maliciously or with conscious disregard of Domokos' rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Stallard's agents or servants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which Stallard is liable for punitive damages.

### COUNT EIGHT
### Interference, FMLA

96. Domokos realleges each paragraph above as if fully rewritten herein.

97. Domokos was employed for at least 1,250 hours of service during the twelve-month period immediately preceding her request for FMLA leave.

98. At all times relevant to this lawsuit, Domokos was employed at a worksite where fifty or more employees were employed by Defendants within seventy-five miles of that worksite.

99. Domokos' disabling condition was a serious health condition.

100. Domokos needed leave to care for herself because of her serious health condition.

101. Domokos gave timely notice of her intention, need, and/or desire to take leave for an FMLA-qualifying event.

102. Domokos was entitled to FMLA leave at the time of her request.

103. Reserves terminated Domokos because of her request for FMLA leave.

104. By terminating Domokos, Reserves denied her FMLA benefits to which she was entitled.

105. Reserves has therefore unlawfully interfered with, restrained, and/or denied Domokos' protected rights under the Family and Medical Leave Act.

106. As a result of her termination, Domokos: lost income, wages, and benefits; incurred costs and expenses, such as attorneys' fees and costs of suit; and, was otherwise injured.

107. Reserves' actions were willful and/or in reckless disregard of Domokos' protected rights.

### COUNT NINE
### Retaliation, FMLA

108. Domokos realleges each paragraph above as if fully rewritten herein.

109. Domokos' request for FMLA leave was protected activity under the FMLA.

110. Reserves knew of Domokos' protected activity.

111. Domokos suffered an adverse employment action when Reserves fired her.

112. There is a causal connection between Domokos' protected activity and her termination.

113. Domokos' protected activity under the FMLA was a motivating factor in Reserves' decision to fire her.

114. Reserves have therefore unlawfully retaliated against Domokos due to her exercise of her rights under the Family and Medical Leave Act.

115. As a result of her termination, Domokos: lost income, wages, and benefits; incurred costs and expenses, such as attorneys' fees and costs of suit; and, was otherwise injured.

116. Reserves' actions were willful and/or in reckless disregard of Domokos' protected rights.

**WHEREFORE,** Domokos prays for judgment against Defendants for: back pay, front pay, and other equitable relief, including reinstatement; compensatory damages in an amount that will fully and fairly compensate her for her injury, damage, and loss; liquidated damages; punitive damages in such an amount as will sufficiently punish and deter the wrongful conduct of Defendants; attorney fees and costs of suit; and, such other relief as the Court deems just, all in excess of $75,000.

### Jury demand

A trial by jury is hereby demanded in the within matter on all claims triable by jury in the maximum number of jurors allowed by law.

        Respectfully submitted,

        */s/ Cathleen Bolek*
        Cathleen M. Bolek (0059884)
        Matthew D. Besser (0078071)
        **BOLEK BESSER GLESIUS LLC**
        Monarch Centre, Suite 302
        5885 Landerbrook Drive
        Cleveland, Ohio 44124
        T 216.464.3004
        F 866.542.0743
        cbolek@bolekbesser.com
        mbesser@bolekbesser.com

        *Counsel for Plaintiff*